UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ALLSTAR MARKETING GROUP, LLC,

                            Plaintiff,

      -against-

THE NORTHWEST COMPANY, LLC, ROSS
AUERBACH, SHADY MAPLE
SMORGASBOARD, INC., JR'S SPORTS
COLLECTIBLES, INC., SPORTS STATION,
INC., FCW STORES, LLC, and
KRAIGYCO, INC.,

                            Defendants.

------------------------------------------------------------x

Case No.: 10 CV 1613

**COMPLAINT**



JUDGE MARRERO

COPY

RECEIVED MAR 01 2010 U.S.D.C. S.D.N.Y. CASHIERS

      Plaintiff Allstar Marketing Group LLC ("Allstar"), by and through its undersigned attorneys Kane Kessler, P.C., as and for its complaint against Defendants, The Northwest Company, LLC ("Northwest"), Ross Auerbach ("Auerbach"), Shady Maple Smorgasboard, Inc. ("Shady Maple"), JR's Sports Collectibles, Inc. ("JR"), Sports Station, Inc. ("Sports Station") and FCW Stores, LLC ("FCW") and Kraigyco, Inc. ("Kraigyco") (collectively, "Defendants") alleges as follows:

## NATURE OF THE ACTION

      1.    This is a civil action for trademark infringement, false designation of origin, false advertising, unfair competition and trademark dilution arising under the federal trademark laws (the "Lanham Act") 15 U.S.C. § 1051 et seq., and for related claims arising under the laws of the State of New York.

      2.    By this action, Allstar seeks remedy for Defendants' repeated, persistent and intentional infringement of Allstar's intellectual property rights despite due notice thereof.

#321113.1

## THE PARTIES

3. Allstar is a limited liability company duly organized under the laws of the State of New York, having its principal place of business at 4 Skyline Drive, Hawthorne, New York.

4. Upon information and belief, Northwest is a New York limited liability Company, with a principal place of business located at 295 Fifth Avenue, Suite 718, New York, New York.

5. Upon information and belief, Auerbach is a New York resident with a principal place of business located 295 Fifth Avenue, Suite 718, New York, New York. Auerbach is the President and Chief Executive Officer of Northwest.

6. Upon information and belief, Shady Maple is a Pennsylvania corporation with a principle place of business in East Earl, Pennsylvania and the owner of the website located at www.shadymaplegiftshop.com (the "Shady Maple Website").

7. Upon information and belief, JR and Sports Station are California corporations with principal places of business in Anaheim, California and Orange, California, respectively. Upon information and belief, JR and Sports Station are the owners of the website located at www.georgesports.com (the "George Sports Website").

8. Upon information and belief, FCW is a Louisiana limited liability company with a principal place of business in Covington, Louisiana and the owner of the website located at www.orleansgiftshop.com (the "Orleans Website").

9. Upon information and belief, Kraigyco is an Idaho corporation with a principal place of business in Meridian, Idaho and the owner of the website located at www.khcsports.com (the "KHC Website").

## JURISDICTION AND VENUE

10. Subject matter jurisdiction over the federal Lanham Act claims in this action is conferred upon this Court pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338 and 1367.

11. This Court has jurisdiction over Plaintiffs' related New York state law claims under 28 U.S.C. §§ 1338 and 1367.

12. Upon information and belief, this Court has personal jurisdiction over each of the Defendants in that Defendants are either located in and/or have extensive contacts with and regularly transact business in this judicial district. Each of the Defendants is either located in this judicial district or has shipped offending products into this judicial district.

13. Upon information and belief, venue is also proper in this judicial district pursuant to 28 U.S.C. §§1391(b) and (c) because Defendants have extensive contacts with and regularly conduct business in this judicial district.

## FACTUAL BACKGROUND

14. Allstar is a leading producer of household and consumer products and is in the business of creating, manufacturing, distributing, and selling a variety of unique household products to consumers and retailers through the use of extensive advertising campaigns, frequently consisting of direct response television advertising. Allstar expends substantial sums of money to produce and air television advertising to promote and sell its products.

### Allstar's SNUGGIE™ Brand Sleeved Fleece Blanket Product

15. In or about August 2008, Allstar began fabricating, marketing and selling a sleeved fleece blanket product under the brand name, "Snuggie." Allstar has continued to produce, market and sell its "Snuggie" brand sleeved blanket product since August 2008. Sales of the product have been phenomenal.

16.     Since August 2008, Allstar has continuously used the SNUGGIE trademark in interstate commerce in connection with the advertising, distribution, marketing and sale of its sleeved blanket product. Allstar is the owner of all right, title and interest in the common law trademark SNUGGIE in connection with sleeved fleece blanket products and goods falling into other classes.

17.     Allstar owns several currently pending United States trademark applications for registration of the SNUGGIE mark, including, but not limited to, serial number 77534067, for "fleece blankets and throws," which was filed on July 29, 2008 (the "'067 Application"). A true and correct copy of the United States Patent and Trademark Office Application evidencing the '067 Application is attached hereto as **Exhibit A**. A Notice of Allowance has been issued in connection with the '067 Application, a Statement of Use has been filed and the application should register shortly.

18.     Allstar has gone through great effort and expense in developing and promoting its SNUGGIE trademark. Allstar has spent over $27 million to produce and air direct response television advertisements for SNUGGIE brand sleeved blankets and otherwise to promote and sell SNUGGIE brand sleeved blankets. In particular, SNUGGIE blankets have been extensively advertised, marketed and sold on the Internet.

19.     As a result of the significant advertising, promotion and sale of its SNUGGIE brand sleeved blanket product, Allstar has developed significant goodwill and customer recognition in the SNUGGIE trademark, making it famous. The SNUGGIE brand blanket has become a pop culture phenomenon and has been the subject of many unsolicited stories in various national publications and on television. For example, the SNUGGIE brand blanket has been featured in the New York Times, on the late-night television shows "Real Time with Bill Maher" and "The

Tonight Show with Jay Leno," and on the daytime talk shows, "The Today Show" and "The Oprah Winfrey Show."

20. The public views the SNUGGIE mark as an indication of the high quality of Allstar's sleeved blanket product.

21. Among the variations of Allstar's SNUGGIE product currently on the market are SNUGGIE brand sleeved fleece blankets bearing licensed collegiate and NCAA sports team trademarks. A licensee of Allstar is currently using the SNUGGIE mark in connection with various NCAA and collegiate trademarks and currently produces and sells collegiate-branded SNUGGIE brand fleece blankets.

**Defendants' Unauthorized Use of the SNUGGIE Mark**

22. After Allstar's successful launch of the SNUGGIE brand sleeved blanket, Defendant Northwest, without the consent or authorization of Allstar, began advertising and promoting a competing sleeved fleece blanket, nearly identical to Allstar's product, prominently using Allstar's SNUGGIE mark and other marks confusingly similar to Allstar's SNUGGIE mark. Northwest has displayed and, upon information and belief, is currently displaying in its advertising and promotional materials the SNUGGIE mark and confusingly similar marks alongside images of its competing sleeved blanket product.

23. Upon information and belief, Northwest has also encouraged its retailers and distributors to use the SNUGGIE mark and confusingly similar marks in connection with their sales of Northwest's sleeved fleece blanket products and has continued to supply sleeved fleece blanket products to several of its distributors and retailers knowing that such retailers and distributors are using the SNUGGIE mark in connection with the sale of Northwest's sleeved fleece blanket products without authorization.

24.     Promotional materials for Northwest's sleeved blanket product appear highly similar to Allstar's packaging and other promotional materials for the SNUGGIE brand sleeved fleece blanket. Both Allstar's promotional materials and the promotional materials Northwest provides to its distributors feature a model reclining on a couch while wearing a sleeved fleece blanket.

25.     Upon information and belief, Northwest has marketed, manufactured, sold and distributed licensed sleeved fleece blankets bearing various sports-related logos, including collegiate-branded sleeved fleece blankets bearing collegiate and NCAA team logos using the SNUGGIE mark.

26.     Northwest's unauthorized use in interstate commerce of the SNUGGIE mark in connection with the sale of its competing sleeved blanket product is likely to cause confusion, mistake and deception on the part of consumers as to Northwest's affiliation, connection, or association with the Allstar, and to cause confusion, mistake and deception as to the true origin, sponsorship, or approval of Northwest's products.

27.     Northwest's use of the SNUGGIE mark is particularly likely to cause substantial consumer confusion in light of the fact that a licensee of Allstar has produced and sold and currently produces and sells collegiate-branded SNUGGIE brand fleece blankets.

28.     Northwest has also used the SNUGGIE mark specifically in connection with sleeved fleece blankets bearing NFL and other professional team logos.

29.     Upon information and belief, sales representatives and distributors of Northwest's products have represented to customers that Northwest has "the exclusive rights to NFL and Disney Fleece 'As Seen on TV' Snuggie."

30. Upon information and belief, sales representatives and distributors of Northwest's products have also told customers of Northwest that Northwest would not sell them NFL-branded sleeved fleece blankets (for which Northwest purports to be the exclusive licensee) unless such customers also fulfill their needs for collegiate-branded sleeved fleece blankets from Northwest.

31. Northwest has also distributed and/or authorized and ratified distribution of marketing materials in connection with its sleeved blanket product that state, among other things, that "Everyone has seen the commercials and now you can capitalize on the national craze!"

32. Northwest has also packaged its NFL-branded sleeved-fleece blanket products in packaging bearing the designation "As Seen on TV."

33. Upon information and belief, Northwest has never advertised its sleeved blanket product on television, nor has Northwest's product been widely-recognized or the subject of a "national craze."

34. Upon information and belief, the use by Northwest and/or its authorized distributors use of the SNUGGIE mark, references to "commercials" that "everyone has seen" and a "national craze" in connection with sleeved fleece blankets and use of the "As Seen on TV" packaging in connection with Northwest's sleeved fleece blanket product are an attempt to unfairly trade on the goodwill of Allstar, whose SNUGGIE brand sleeved blanket product has been advertised extensively on television, is widely-recognized and has become a pop culture phenomenon.

35. Upon information and belief, Northwest's aforementioned actions are willful and reflect an intent to confuse, mislead and deceive customers and to profit from the goodwill associated with Allstar's SNUGGIE mark.

36. Upon information and belief, Defendant Auerbach has encouraged, ratified, adopted and/or is personally participating in the activities of Northwest described above.

#321113.1                                                     7

37.  Defendants Shady Maple, JR, Sports Station, FCW and Kraigyco (collectively the "Retailer Defendants") are each retailers and/or distributors of Northwest's sleeved fleece blanket product. The Retailer Defendants have marketed and sold and currently market and sell Northwest's sleeved fleece blanket product on their respective websites.

38.  Each of the Retailer Defendants has marketed, sold and distributed and, upon information and belief, continues to market, sell and distribute Northwest sleeved fleece blanket products using Allstar's SNUGGIE mark, in derogation of Allstar's rights.

39.  In particular, all of the Retailer Defendants have referred to Northwest sleeved fleece blanket products on their websites using the SNUGGIE mark and have displayed the SNUGGIE mark alongside images and descriptions of Northwest sleeved fleece blanket products stamped "Northwest" on pages of their websites advertising Northwest sleeved fleece blanket products and/or offering such products for sale. Northwest sleeved fleece blanket products are identified on the Retailer Defendants' websites using terms such as "Snuggie," "Snuggies," "Snuggie Comfy Throw," and "Snuggie fleece," among other terms. Attached hereto as **Exhibit B** are examples of pages from the Shady Maple Website displaying the SNUGGIE mark in connection with Northwest's sleeved fleece blanket product. Attached hereto as **Exhibit C** are examples of pages from the George Sports Website displaying the SNUGGIE mark in connection with Northwest's sleeved fleece blanket product. Attached hereto as **Exhibit D** are examples of pages from the Orleans Website displaying the SNUGGIE mark in connection with Northwest's sleeved fleece blanket product. Attached hereto as **Exhibit E** are examples of pages from the KHC Website displaying the SNUGGIE mark in connection with Northwest's sleeved fleece blanket product.

40. The Retailer Defendants have also used the term "Snuggie" as an internal search term on their websites, such that consumers typing the term "Snuggie" in the "search" boxes on each of the Retailer Defendants' websites are directed to the pages on the websites on which Northwest's sleeved fleece blanket products are offered for sale.

41. Upon information and belief, the Retailer Defendants' uses of the SNUGGIE mark in connection with Northwest's sleeved fleece blanket are an attempt to unfairly trade on the goodwill of Allstar, whose SNUGGIE brand sleeved blanket product has been advertised extensively on television, is widely-recognized and has become a pop culture phenomenon.

42. Upon information and belief, the Retailer Defendants' aforementioned actions are willful and reflect an intent to confuse, mislead and deceive customers and to profit from the goodwill associated with Allstar's SNUGGIE mark.

## COUNT I

### False Designation of Origin, Unfair Competition, False Advertising
### Under 15 U.S.C. §1125(a)

43. Allstar repeats and realleges each and every allegation contained in paragraphs 1 through 42 above as if fully set forth herein.

44. The actions of Defendants described above, and specifically their use of the SNUGGIE mark in interstate commerce to advertise, promote, market and sell Northwest's sleeved blanket product, constitute false designation of origin, false advertising and unfair competition, in violation of 15 U.S.C. § 1125(a).

45. The actions of Defendant Northwest described above, and specifically its references to televisions commercials that "everyone has seen" and a "national craze" in connection with its sleeved blanket product constitute false designation of origin, false advertising and unfair competition, in violation of 15 U.S.C. § 1125(a).

46. Northwest is also liable for contributing to its distributors' and retailers' false designation of origin, false advertising and unfair competition as a result of the actions described above, specifically its encouragement of distributors and retailers of Northwest products to use the SNUGGIE mark in connection with their sales of Northwest's sleeved fleece blanket products and its distribution of sleeved fleece blanket products to distributors and retailers, knowing that such retailers and distributors have used the SNUGGIE mark in connection with the sale of Northwest's sleeved fleece blanket products without authorization.

47. Northwest's unauthorized use in interstate commerce of the SNUGGIE mark in connection with the sale of its competing sleeved blanket product and Northwest's references to television commercials that "everyone has seen" and a "national craze" are likely to cause confusion, mistake and deception on the part of the public as to Northwest's affiliation, connection, or association with Allstar, and to cause confusion, mistake and deception as to the true origin, sponsorship, or approval of its products, all in violation of 15 U.S.C. §1125(a).

48. Defendants have willfully continued its course of wrongful conduct after being put on notice of Allstar's claims herein.

49. Upon information and belief, Defendants have undertaken these acts maliciously, willfully and with the devious intent to cause confusion, mistake and deception on the part of the public and unfairly compete with Allstar.

50. Defendants' acts have damaged Allstar's business reputation and goodwill and unjustly enriched Defendants.

51. Defendants' acts have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Allstar's business reputation and goodwill for which there is no adequate remedy at law. Defendants' acts have also caused, and unless enjoined, will continue to

cause, inevitable public confusion and substantial and irreparable harm to the public for which there is no adequate remedy at law.

52. Allstar is therefore entitled to injunctive relief pursuant to 15 U.S.C. §1116.

53. Pursuant to 15 U.S.C. § 1117, Allstar is also entitled to recover damages in an amount to be determined at trial, including, but not limited to, profits made by Defendants on sales of Northwest sleeved blanket products using the SNUGGIE mark and confusingly similar variations thereof and the costs of this action.

54. Upon information and belief, Allstar is further entitled to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C §1117, since Defendants' actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

## COUNT II

### Federal Trademark Dilution Under 15 U.S.C. §1125(c)

55. Allstar repeats and realleges each and every allegation contained in paragraphs 1 through 54 above as if fully set forth herein.

56. The actions of Defendants described above, and specifically their unauthorized use of the SNUGGIE mark in interstate commerce to advertise, promote, market and sell Northwest's competing sleeved blanket products, are likely to cause dilution of Allstar's SNUGGIE mark by blurring in violation of 15 U.S.C § 1125(c).

57. Northwest is also liable for contributing to its distributors' and retailers' dilution of the SNUGGIE as a result of the actions described above, specifically its encouragement of distributors and retailers of Northwest products to use the SNUGGIE mark in connection with their sales of Northwest's sleeved fleece blanket products and its distribution of sleeved fleece blanket

products to distributors and retailers, knowing that such retailers and distributors have used the SNUGGIE mark in connection with the sale of Northwest's sleeved fleece blanket products without authorization.

58. The SNUGGIE mark was first used in commerce in August 2008, and has been continuously used in commerce since then in connection with the marketing, promotion and sale of sleeved blankets.

59. As a result of Allstar's substantial investment of time, effort and money in advertising of its SNUGGIE brand sleeved blanket product and the substantial sales of SNUGGIE brand sleeved blankets, the SNUGGIE mark has become famous within the meaning of 15 U.S.C. §1125(c).

60. Defendants' actions have diluted and will continue to dilute, the distinctive quality of the famous SNUGGIE mark by destroying the association between the SNUGGIE mark and the sleeved blanket product designed, marketed, distributed and sold by Allstar, in violation of 15 U.S.C. § 1125(c).

61. Defendants' acts have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Allstar, including, but not limited to, diminution of the value and goodwill associated with the SNUGGIE mark and injury to Allstar's business, for which there is no adequate remedy at law. Allstar is therefore entitled to injunctive relief pursuant to 15 U.S.C. §1116.

62. Pursuant to 15 U.S.C. § 1117, Allstar is also entitled to recover damages in an amount to be determined at trial, including, but not limited to, profits made by Defendants on the sale of Northwest sleeved blanket products using the SNUGGIE mark and confusingly similar variations thereof and the costs of this action.

63. Upon information and belief, Allstar is further entitled to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C §1117, since Defendants' actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

## COUNT III

### Deceptive Trade Practices Under New York Gen. Bus. Law § 349

64. Allstar repeats and realleges each and every allegation contained in paragraphs 1 through 63 above as if set forth fully herein.

65. The actions of Defendants described above, and specifically their use of Allstar's SNUGGIE mark in interstate commerce to advertise, promote, market and sell Northwest sleeved blanket products constitute deceptive trade practices in violation of New York Gen. Bus. Law § 349.

66. The actions of Northwest described above, and specifically its of use of the "As Seen on TV" designation, its references to televisions commercials that "everyone has seen" and a "national craze," and its refusal to sell NFL branded sleeved fleece blankets, for which it purports to be the exclusive licensee, to customers unless such customers also fulfill their needs for collegiate-branded sleeved fleece blankets through Northwest constitute deceptive trade practices in violation of New York Gen. Bus. Law § 349.

67. By virtue of the aforementioned acts and conduct of Defendants, Allstar has sustained, and will continue to sustain, economic damage including, but not limited to, injury to Allstar's business reputation, loss of goodwill in the SNUGGIE mark, loss of business, and loss of advantageous business contacts and expectancies in customers.

68. Pursuant to N.Y. Gen. Bus. Law § 349(h), Allstar is entitled to recover damages in an amount to be determined at trial, including, but not limited to, profits made by Defendants on the sale of Northwest sleeved blanket product using the SNUGGIE mark and the costs of this action.

69. Upon information and belief, Allstar is further entitled to recover additional treble damages and reasonable attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349(h), since Defendants' actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

## COUNT IV

### Trademark Dilution Under New York Gen. Bus. Law § 360-l

70. Allstar repeats and realleges each and every allegation contained in paragraphs 1 through 69 above as if set forth fully herein.

71. The actions of Defendants described above, and specifically their unauthorized use of the SNUGGIE mark in interstate commerce to advertise, promote, market and sell Northwest's sleeved blanket products, are likely to cause dilution of Allstar's SNUGGIE mark and will continue to dilute the distinctive quality of Allstar's famous mark by destroying the association between the SNUGGIE mark and the sleeved fleece blanket product designed, marketed, distributed and sold by Allstar.

72. Defendants' acts have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Allstar, including but not limited to diminution of the value and goodwill associated with the Allstar's SNUGGIE mark and injury to Allstar's business, for which there is no adequate remedy at law.

73. Allstar is therefore entitled to injunctive relief, pursuant to New York Gen. Bus. Law § 360-l.

## COUNT V

### (Unjust Enrichment Under New York Law)

74. Allstar repeats and realleges each and every allegation contained in paragraphs 1 through 73 above as if set forth fully herein.

75. Defendants, by their actions described above, has misappropriated for its own use and gain Allstar's intellectual property.

76. Defendants have used and plans to continue to use Allstar's intellectual property.

77. Defendants, as a result of their aforementioned wrongful acts, have been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Allstar prays that this Court enter judgment against Defendants as follows:

(a) That Allstar be granted preliminary and permanent injunctive relief restraining Defendants, or any person or entity acting in concert with them, from engaging in any acts in violation of the United States trademark laws and/or New York State law, including using the mark SNUGGIE, or any confusingly similar variations thereof; and engaging in any acts that constitute infringement, unfair competition, false advertising, trademark dilution, or importation of articles violating trademark laws under the trademark and unfair competition laws;

(b)     That Defendants be required to take any actions as may be directed by the Court for the purpose of attempting to alleviate or remedy any consumer confusion cause by its actions complained of herein;

(c)     That Allstar be awarded damages pursuant to 15 U.S.C. § 1117(a) sufficient to compensate Allstar for Defendants' false designation of origin, unfair competition, false advertising, and dilution with respect to Allstar's SNUGGIE mark and its retailers' and distributors' false designation of origin, unfair competition, false advertising, and dilution with respect to Allstar's SNUGGIE mark;

(e)     That Defendants be ordered to account to Allstar for their profits derived by reason of its use of the SNUGGIE mark and confusingly similar variations thereof and that Allstar be awarded Defendants' profits derived by reason of said actions;

(f)     That Defendants' profits in connection with its use of the SNUGGIE mark and confusingly similar variations thereof be trebled and awarded to Allstar and that Allstar be awarded costs and attorneys' fees and expenses of the present suit, pursuant to 15 U.S.C. §1117, as a result of Defendants' willful and intentional acts in violation of federal trademark law with respect to the SNUGGIE mark;

(g)     That Allstar be awarded damages sufficient to compensate it for the damages caused by Defendants' deceptive trade practices, in violation of New York Gen. Bus. Law § 349 with respect to the SNUGGIE mark;

(h)     That Allstar be awarded damages for Defendants' unjust enrichment as complained of herein with respect to the SNUGGIE mark;

(i)     That Allstar be awarded both prejudgment and postjudgment interest on any monies to be paid by Defendants;

(j)     That Allstar be awarded its attorneys' fees, costs and disbursements in bringing the present action; and

(k)     Such other and further relief as to the Court seems just, proper and equitable.

Dated: New York, New York
       February 26, 2010

                                    **KANE KESSLER, P.C.**

                                    By: _____
                                        Adam M. Cohen (AC-9918)
                                        Jeffrey H. Daichman (JD-8802)
                                        Sarah Bawany Yousuf (SY-0305)
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

*Attorneys for Plaintiff Allstar Marketing Group, LLC*